ISABELLA CROSIER, RESPONDENT, v. DAVID CRAIG, APPELLANT.

*Breach of contract of marriage — evidence as to defendant's property — as to defendant's conduct towards other women.*

In this action, brought for the recovery of damages for the breach of a promise to marry, two witnesses, called by the plaintiff, were permitted to testify that the defendant's farm, and the personal property thereon, were worth about $8,000, against the objection and exception of the defendant that the amount of his property could only be shown by reputation:

*Held*, that the evidence was properly received.

While evidence of the reputed amount of defendant's property. in an action brought for the breach of contract of marriage, is competent, because, in most cases, correct knowledge of the amount is confined to the defendant and his friends, yet it is not improper to permit the amount of property in the defendant's possession to be shown by direct and precise evidence.

Defendant offered evidence to show what his treatment was of other girls than the plaintiff.

*Held*, that such evidence was properly excluded unless it was shown that the plaintiff knew of such attentions, in which case it might be notice to the plaintiff that defendant's attentions to her were not indicative of an intent on his part to marry her.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict rendered at the Delaware Circuit for $1,800, and from an order denying a motion for a new trial made on a case and exceptions containing the evidence, and from an order denying a motion for a new trial made on the grounds of surprise and newly-discovered evidence.

The action was brought to recover damages for the breach of a contract to marry.

*William H. Johnson*, for the appellant.

*Edwin D. Wagner*, for the respondent.

FOLLETT, J. :

Appeal from a judgment entered on a verdict and from an order denying a motion for a new trial made on a case containing exceptions and all of the evidence, and from an order denying a motion for a new trial made on the grounds (1) of surprise, and (2) of newly discovered evidence. The Special Term did not err in refusing to set aside the verdict as contrary to the evidence.

It is settled that in an action for the recovery of damages for the breach of a promise to marry, the plaintiff may prove, upon the question of damages, the amount of the defendant's property. In this case two witnesses were permitted to testify, over defendant's objection and exception, that his farm and personal property thereon were worth about $8,000. He now insists that this was error, and that the amount of his property could be shown only by reputation. In support of this position he cites *Kerfoot* v. *Marsden* (2 F. & F., 160); *Kniffen* v. *McConnell* (30 N. Y., 285), and *Crandall* v. *Quin* (19 J. & S., 276). In *Kerfoot* v. *Marsden* it was said, at *nisi prius :* "You may ask in a general way as to the defendant's property, but you cannot go into particular items as to his property. If you like, I will admit the items, subject to objection." The questions as to the items objected to were not pressed.

In *Kniffen* v. *McConnell* the trial court permitted the plaintiff to prove what the defendant was worth, which was objected to, but

upon what grounds does not appear; nor does it appear whether the amount of defendant's property was shown by reputation or by evidence of the items and values of the items. In considering the case it was said (page 289): "The objection in this case was not to the mode of proof, but to the admissibility of that kind of evidence. It may be objectionable to particularize the defendant's property, and such evidence should be confined to general reputation as to the circumstances of the defendant. To that extent I think it admissible."

In *Crandall* v. *Quin* evidence of the wealth of the woman whom defendant married was admitted over the defendant's objection, for which the judgment was reversed. In discussing this question *Kniffen* v. *McConnell* was cited and approved, but the question presented in the case at bar was not involved in that case.

The foregoing are the only authorities cited by counsel or found by the court which tend to support the appellant's contention. Evidence of the particulars of the defendant's property in such actions has long been received without question. In *Harrison* v. *Cage and Wife* (Carthew, 467), an action for a breach of a woman's promise to marry, it was shown that she was worth £3,000 when the plaintiff courted her, and that afterwards she became worth double that sum by the death of her brother. In *Smith* v. *Woodfine* (1 C. B. [N. S.], 660), and in *Wood* v. *Hurd* (2 Bing. N. C., 166), evidence of the value of defendant's property, and of what it consisted, was given. In *Berry* v. *DaCosta* (L. R., 1 C. P., 331, 336) it was said: "There was evidence that he (defendant) was a person of considerable property, and it was suggested that he had large expectations. He might have shown at the trial what his means really were."

It is a fundamental rule that the best attainable evidence must be produced, and while evidence of the reputed amount of defendant's property may not be incompetent, because in most cases accurate knowledge of the amount is confined to the defendant and his friends, yet it cannot be incompetent to permit the amount in defendant's possession to be shown by direct and precise evidence, greatly superior in probative force to evidence of reputation, which is often nothing but public rumor founded upon little or no knowledge of the facts. Should a defendant seek to controvert the plaintiff's evidence as to the amount of his property, we think it

would be competent to specify his property and his liabilities, and that he could not be confined to (even if it would be competent for him to give, which is doubted), evidence that he was reputed to be worth much less than the amount testified to by the plaintiff's witnesses. The mode by which a defendant may show the amount of his property would seem to be proper to be adopted by the plaintiff to establish the same fact.

The defendant proved that plaintiff wrote him two letters a day or two before his marriage, demanding a settlement for the wrong which she claimed defendant contemplated. The letters are set out at page 90. Upon her cross-examination the plaintiff had testified to writing the letters, and upon the redirect, she was asked : "Q. How did you come to write that first letter ? A. My father requested me to do it. Objected to by defendant's counsel, and the court requested to strike out answer to question above. Objection overruled and request denied. Defendant's counsel duly excepted." The defendant having omitted to object to this question, and taken his chances as to the answer to be given, could not, as a matter of right, afterwards demand that the answer, which was responsive to the question, should be stricken out. Again, no grounds of objection were specified ; and besides, it is difficult to see how the answer could have harmed defendant.

It was immaterial whether Walter Gladstone, plaintiff's witness, was a creditor of her deceased father's estate, as the result of the action could not increase or decrease the estate.

Christie Gibbs, defendant's witness, testified that she never noticed anything that led her to think that the parties were more than ordinary good friends ; but that on one occasion she told plaintiff that " folks would say, you are going to be married if you don't stop carrying on so." She replied : " That is nothing, I carried on with John, his brother, just the same. I wouldn't marry neither of them. Q. Did you see any difference in his treatment to this girl, or his treatment of other girls ? Objected to by plaintiff. Objection sustained. Defendant duly excepted." Defendant's treatment of other girls was not a relevant fact, unless it was shown that plaintiff knew of such attentions, in which case it might be notice to the plaintiff that defendant's attentions to her were not indicative of an intent, on his part, to marry her.

There was no error in the charge in respect to the corroboration of plaintiff's evidence by the evidence of her mother. The plaintiff was strongly corroborated by the evidence of her mother and of several other witnesses, if they were to be believed. The jury was cautioned that, in considering whether the mother was to be believed and if believed, how much weight was to be given to her evidence, to remember that the mother deeply sympathized with the plaintiff, and believed that she had been wronged by the defendant.

The Special Term did not err in denying the motion for a new trial, on the ground of surprise and of newly discovered evidence. The affidavits do not disclose any new evidence worthy of consideration, but simply disclose the fact that a witness would testify that he rode with the parties for a short distance on the occasion when plaintiff swears the first of many promises of marriage was made ; and that he was in the wagon when they passed over that part of the road where plaintiff testified the promise was made ; and that no promise was made in his hearing. The evidence of the engagement is not confined to the promise which the plaintiff testified was made on this occasion, but is properly inferrable from affectionate attention extending over a period of six years, testified to by others, and by repeated promises testified to by the plaintiff, one or more of which were heard and testified to by the plaintiff's mother.

The judgment and orders are affirmed, with costs.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and orders affirmed, with costs.